UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

GEORGE YORK, II,

     Plaintiff,     Case No. 1:10-cv-28

v.     Hon. Robert J. Jonker

FOREST VIEW PSYCHIATRIC
HOSPITAL,

     Defendant.
                /

**REPORT AND RECOMMENDATION**

  This is a civil rights action brought by the pro se plaintiff pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12102 *et seq.*, and "US Code Title 42, Chapter 21." Compl. at ¶ 1 (docket no. 1). This matter is now before the court on defendants' motion for summary judgment (docket no. 41).

  **I.**  **Plaintiff's complaint**

  Plaintiff sets forth the following allegations in his complaint: Plaintiff is disabled with a "mental impairment/illness" described as bi-polar disorder and "significant mood disorders." Compl. at ¶ 1. His claim arises from an incident that occurred on August 25, 2007, when he was an inpatient at defendant Forest View Psychiatric Hospital. *Id.* On that day, plaintiff took his daily medications at the nurses station, not knowing that defendant's medical staff had administered a very heavy dose of a sedative. *Id.* at ¶ 2. Defendant's medical staff included new nurses and doctors who did not like plaintiff because he questioned the medications prescribed and was an educated African American. *Id.* Plaintiff became very dizzy and returned to the nurses station complaining of dizziness. *Id.* The nurses would not respond to plaintiff's request to check his blood pressure and

he collapsed to the floor while asking for assistance. *Id.* He suffered injuries in the form of a hyperflexed knee and a torn lateral meniscus. *Id.*

Defendant's medical staff "knew what they had done" but covered it up. *Id.* at ¶ 3. Plaintiff was heavily sedated for over 24 hours and placed in an isolation room. *Id.* He requested an MRI at an outside medical facility, but medical staff refused the request. *Id.* Plaintiff was sent to an in-house orthopedic nurse who performed an x-ray, "knowing [] that actual ligament tears and nerve damage would not show up on an x-ray." *Id.* Plaintiff had a subsequent MRI which shows a right lateral meniscus tear. *Id.* at ¶ 4.

Plaintiff contends that defendant: had the responsibility to make sure he received the best medical care possible; failed to provide that level of care; "did nothing" after administering plaintiff "a lethal drug dose;" and is responsible for his injuries. *Id.* at ¶ 3. Plaintiff states that "[t]his is a clear civil rights violation" and that the actions by defendant's staff were racially motivated. *Id.* Plaintiff has suffered permanent physical and mental injuries and will not be able to do carpentry work as he has in the past. *Id.* at ¶¶ 3-4. Plaintiff seeks financial compensation of $1,500,000.00 which he intends to give to a non-profit organization he founded, Sunlake Ministries, Incorporated. *Id.* at ¶ 4.

## II. Defendant's motion for summary judgment

### A. Legal standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v.*

*Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's claim under § 1983

Plaintiff's complaint seeks relief under 42 U.S.C., Chapter 21. Compl. at ¶ 1. While plaintiff claims that his injuries were racially motivated, he does not point to which particular statute in Chapter 21 forms the basis of this lawsuit. Presumably, it is brought under 42 U.S.C. § 1983. Section 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).

In its motion, defendant contends that it cannot be liable under 42 U.SC. § 1983, and plaintiff, in response, does not suggest he is bringing his claim under a different section of Chapter 21.

To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendant contends that it is not an arm of the state subject to liability under § 1983 because it is not a state actor. In support of its claim, defendant has submitted documentation demonstrating that it is a private corporation, Forest View Psychiatric Hospital, Inc., doing business under the assumed name of Forest View Psychiatric Hospital. *See* Exhibit 2 (docket no. 41-2).

Defendant's status as a private corporation, however, is not dispositive of this issue. A non-governmental defendant can be considered a "state actor" for purposes of liability under § 1983 if plaintiff can demonstrate that the defendant's private conduct was "fairly attributable" to the state. *See Ellison v. Garbarino*, 48 F.3d 192, 194-95 (6th Cir. 1995). The Sixth Circuit recognizes three tests for determining whether private conduct is "fairly attributable" to the state: the public function test; the state compulsion test; and the nexus test. *Id.* at 195. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as running elections or eminent domain. *Id.* The state compulsion test "requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Id.* Finally, the nexus test requires a sufficiently close relationship between the state and the private actor so that

the action taken may be attributed to the state, i.e., through state regulation or contract. *Id.* Here, there is no evidence before the court that defendant's conduct met any of these three tests sufficient to demonstrate it was acting as an arm of the state during plaintiff's hospitalization on August 25, 2007. Accordingly, defendant is entitled to summary judgment to the extent that plaintiff alleged a violation of § 1983.[1]

### C. Plaintiff's failure to disclose expert witnesses

Defendant contends that plaintiff cannot prove his claim under either the ADA or the Rehabilitation Act without expert testimony from psychiatrists, radiologists, pharmacologists and/or rehabilitationists to establish essential elements of the case such as: "disability" under the ADA and Rehabilitation Act; a "substantial" limitations on one or more life activities under the ADA; the "intentionality" required to recover damages under the Rehabilitation Act; proximate cause between the medication and the fall; the medical non-necessity for the sedative and isolation time; the radiological necessity for an MRI under the circumstances; and the medical prognosis of meniscal injuries and the duration of disabilities.

Defendant's brief does not cite any authority to support its argument that expert witnesses are required to prove claims under the ADA or the Rehabilitation Act. Other courts have concluded that expert testimony is not necessary to establish an ADA claim. In *Katz v. City Metal Co., Inc.*, 87 F.3d 26 (1st Cir. 1996), the court observed that:

> There is certainly no general rule that medical testimony is always necessary to establish disability. Some long-term impairments would be obvious to a lay jury ( e.g., a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatments and symptoms

---

[1] If plaintiff is relying on some other section of Chapter 21, he has the opportunity to file an objection to this report and specifically identify that section, and spell out how the elements giving rise to a claim under that section have been met.

> over a substantial period that would put the jury in a position where it could determine that he did suffer from a disability within the meaning of the ADA.

*Katz,* 87 F.3d at 32. The necessity of medical testimony in an ADA case "turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge." *Marinelli v. City of Erie, Pennsylvania*, 216 F.3d 354, 360 (3rd Cir. 2000). *See Gallimore v. Newman Machine Co., Inc.,* 301 F.Supp.2d 431, 444 (M.D. N.C. 2004) (agreeing with "the majority view expressed in *Katz* and *Marinelli* that the absence of medical evidence is not necessarily fatal to a plaintiff's ADA claim but that such an absence argues in favor of the [employer's] position") (internal quotation marks omitted); *United States v. City & County of Denver, Colorado*, 49 F.Supp.2d. 1233, 1240 (D. Colo.1999) ("no rule exists that medical evidence is always necessary to show that an impairment substantially limits a claimant's ability to work" for purposes of establishing an ADA claim; lack of physician testimony is one factor in determining whether a plaintiff has met his burden to establish a disability) (citing *Katz*).

The court agrees with these authorities that while medical testimony is an important factor in establishing plaintiff's ADA claim, plaintiff's failure to identify expert witnesses is not necessarily fatal to that claim. This same reasoning applies to plaintiff's claim under the Rehabilitation Act. *See Monette v. Electronic Data Systems Corporation*, 90 F.3d 1173, 1177-78 (6th Cir. 1996) ("[t]he analysis of claims under the Americans with Disabilities Act roughly parallels those brought under the Rehabilitation Act of 1973"). Accordingly, defendant's motion for summary judgment should be denied with respect to the ADA and Rehabilitation Act claims.

### III. Recommendation

Accordingly, I recommend that defendant's motion for summary judgment (docket no. 40) be **GRANTED** as to plaintiff's claims brought pursuant to 42 U.S.C. § 1983 and **DENIED** in all other respects.

Dated: January 28, 2011 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).