UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

GEORGE YORK, II,

        Plaintiff,        Case No. 1:10-cv-28

v.        Hon. Robert J. Jonker

FOREST VIEW PSYCHIATRIC
HOSPITAL,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by the *pro se* plaintiff pursuant to Section 504 of the Rehabilitation Act of 1973 ( 29 U.S.C. § 794), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12102 *et seq.*, and "US Code Title 42, Chapter 21." Compl. at ¶ 1 (docket no. 1). This matter is now before the court on defendants' second motion for summary judgment (docket no. 71).

**I.    Plaintiff's complaint**

The court previously summarized plaintiff's allegations in his complaint as follows:

Plaintiff is disabled with a "mental impairment/illness" described as bi-polar disorder and "significant mood disorders." Compl. at ¶ 1. His claim arises from an incident that occurred on August 25, 2007, when he was an inpatient at defendant Forest View Psychiatric Hospital. *Id.* On that day, plaintiff took his daily medications at the nurses station, not knowing that defendant's medical staff had administered a very heavy dose of a sedative. *Id.* at ¶ 2. Defendant's medical staff included new nurses and doctors who did not like plaintiff because he questioned the medications prescribed and was an educated African American. *Id.* Plaintiff became very dizzy and returned to the nurses station complaining of dizziness. *Id.* The nurses would not respond to plaintiff's request to check his blood pressure and he collapsed to the floor while asking for assistance. *Id.* He suffered injuries in the form of a hyperflexed knee and a torn lateral meniscus. *Id.*

Defendant's medical staff "knew what they had done" but covered it up. *Id.* at ¶ 3. Plaintiff was heavily sedated for over 24 hours and placed in an isolation

room. *Id.* He requested an MRI at an outside medical facility, but medical staff refused the request. *Id.* Plaintiff was sent to an in-house orthopedic nurse who performed an x-ray, "knowing [] that actual ligament tears and nerve damage would not show up on an x-ray." *Id.* Plaintiff had a subsequent MRI which shows a right lateral meniscus tear. *Id.* at ¶ 4.

Plaintiff contends that defendant: had the responsibility to make sure he received the best medical care possible; failed to provide that level of care; "did nothing" after administering plaintiff "a lethal drug dose;" and is responsible for his injuries. *Id.* at ¶ 3. Plaintiff states that "[t]his is a clear civil rights violation" and that the actions by defendant's staff were racially motivated. *Id.* Plaintiff has suffered permanent physical and mental injuries and will not be able to do carpentry work as he has in the past. *Id.* at ¶¶ 3-4. Plaintiff seeks financial compensation of $1,500,000.00 which he intends to give to a non-profit organization he founded, Sunlake Ministries, Incorporated. *Id.* at ¶ 4.

Report and Recommendation at pp. 1-2 (docket no. 75).

## II.    Defendant's motion for summary judgment

### A.    Legal standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's claim under the Rehabilitation Act

Plaintiff seeks relief under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which provides in pertinent part that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

In order to prevail on his claim of discrimination under the Rehabilitation Act, plaintiff must prove the following elements:

> (1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Doherty v. Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988). Defendant points out that it is not a government entity, but a private, for-profit-corporation operating under the name Forestview Psychiatric Hospital, Inc. *See* Michigan Department of Energy, Labor & Economic Growth ("MELEG") Profit Corporation Information Update for years 2006-2008 (docket no. 72-12). The court notes that the Rehabilitation Act has been held to apply to hospitals which receive

3

"Federal financial assistance" in the form of federal funding through Medicaid and Medicare. *See, e.g., Davis v. Flexman*, 109 F. Supp. 2d 776, 785-86 (S.D. Ohio 1999) (citing cases). However, plaintiff has provided no evidence that defendant receives Federal financial assistance from these programs. Accordingly, defendant is entitled to summary judgment on this claim.

### C. Title II of the ADA

Plaintiff apparently alleged discrimination under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, which provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." For purposes of the ADA, a "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). Thus, "Title II prohibits discrimination by a 'public entity,' which is defined as any state and local government and its agencies and instrumentalities, as well as the National Railroad Passenger Corporation and any commuter authority." *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995).

Here, defendant has demonstrated that it is not a "public entity" subject to § 12131 of the ADA, but rather a private corporation. *See* MELEG Profit Corporation Information Update for years 2006-2008 (docket no. 72-12). A private corporation is not considered a public entity under Title II of the ADA. *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) (private prison management company was not a public entity under Title II of the ADA even though it contracted

4

to provide prison management services to the State of Florida ); *Zibbell v. Michigan Department of Human Services*, 313 Fed. Appx. 843, 849-50 (6th Cir. 2009) (noting distinction between the narrow application of the ADA to a "public entity" and the broader application of § 504 of the Rehabilitation Act (29 U.S.C. § 794(a) to "any program or activity receiving Federal financial assistance"); *Green v. City of New York*, 465 F.3d 65, 78-79 (2nd Cir. 2006) (private hospital performing services pursuant to contract with a municipality is not a creature of the state or municipality and is not considered a public entity under Title II of the ADA); *Cox v. Jackson*, 579 F. Supp. 2d 831, 852-53 (E. D. Mich. 2008) (a private contractor providing medical services to the state prison system "is neither a state or local government, nor a department, agency, or instrumentality of the state" and does not become a public entity subject to suit under Title II of the ADA by "merely contracting with a governmental entity to provide governmental services"). Accordingly, defendant is entitled to summary judgment as to plaintiff's claim under Title II of the ADA.

### D. The Civil Rights Act

As previously discussed, plaintiff's complaint seeks relief under "42 U.S.C., Chapter 21." This chapter includes numerous civil rights statutes. *See* 42 U.S.C. §§ 1981 - 2000h-6. The court previously granted defendant's motion for summary judgment insofar as plaintiff alleged a claim under 42 U.S.C. § 1983. In the present motion, defendants seek summary judgment as to plaintiff's complaint stating only that there was no "state action" as required by the "Civil Rights Act."

The court is hampered in this matter by plaintiff's failure to identify the statutory basis for his claim and by defendant's failure to ascertain the nature of plaintiff's remaining civil

5

rights claims. In resolving this issue, the court has a duty to construe a *pro se* complaint liberally. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987). However, there are limits to the court's "liberal construction" of a *pro se* complaint. As the court observed in *Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757 (E.D. Mich. 2009):

> [C]ourts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

*Rogers*, 595 F. Supp.2d at 766.

Here, plaintiff's complaint did not allege the violation of any particular civil rights statute. On page six of his complaint, plaintiff listed a number of cases he claims apply to his civil rights claims. Assuming that these cases involve a civil rights statute at issue in this lawsuit, none of the cases involve claims for relief under Title 42, other than to claim a civil rights violation pursuant to 42 U.S.C. § 1983 or to seek attorney fees under 42 U.S.C. § 1988).[1] These listed cases

---

[1] *Bragdon v. Abbott*, 524 U.S. 624 (1998) (cited by plaintiff as "Bragdon v. Abbott 1998") (ADA); *Wyatt v. Stickney*, 344 F. Supp. 373 (M.D. Ala. 1972) (no statute); *Flakes v. Frank*, 322 F. Supp. 2d 981 (W.D. Wisc. 2004) (ADA); *Richard S. v. Department of Developmental Services of the State of California*, 317 F.3d 1080 (9th Cir. 2003) (ADA and 42 U.S.C. 1988 (attorney fee award)); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003) (ADA, Rehabilitation Act and Federal Medicaid statute); Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440 (2003) (cited by plaintiff as "Clackamas Assoc. v. Wells (April 2003)") (ADA); *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir. 2002) (42 U.S.C. § 1988); "504 case Paducah (KY) ISD, 32 IDELR 182 (OCR 1999);" *Kentucky Association for Retarded Citizens, Inc. v. Conn*, 674 F.2d 582 (6th Cir. 1982) (Rehabilitation Act); *Blum v. Bacon*, 457 US 132 (1982) (Social Security Act); *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985) (14th Amendment); *Clark v. Cohen*, 794 F.2d 79 (1986) (Rehabilitation Act and 14th Amendment); *City of Pleasant Grove v. United States*, 479 U.S. 462 (Voting Rights Act of 1965 (42 U.S.C. § 1973c)); *Fisher v.*

do not salvage plaintiff's complaint. First, the court has dismissed plaintiff's claims to the extent he seeks relief under § 1983. Second, § 1988 does not create an independent cause of action for a civil rights violation. *See Moor v. Alameda County*, 411 U.S. 693, 704 n. 17 (1973) ("the lower federal courts have repeatedly rejected the argument that § 1988 independently creates a federal cause of action for the violation of federal civil rights) (collecting cases); *Hall v. Wooten*, 506 F. 2d 564, 568 (6th Cir. 1974) ("[w]e have held that section 1988 does not create federal causes of action for violation of civil rights"); *Stagemeyer v. County of Dawson*, 192 F. Supp. 2d 998, 1006 (D. Neb. 2002) ("[p]laintiffs' section 1988 claim must also be dismissed because 42 U.S.C. § 1988 does not create an independent federal cause of action for the violation of federal civil rights") (citing *Moor*).

Plaintiff failed to identify the any particular civil rights statute in either his complaint or his responses to two motions for summary judgment filed by defendants. Furthermore, plaintiff has failed to produce any evidence of racial discrimination. Indeed, during his deposition, plaintiff could not identify any racially motivated activity by defendant or its staff. *See* York Dep. Trans. at pp. 53-54 (docket no. 72-11). It is not for this court to act as plaintiff's advocate and try to devise a civil rights claim from the evidence of record where none is apparent. *See, generally, Springer v. Best*, 264 F.2d 24, 26 (9th Cir. 1959) ("[i]t is not the function of this Court to supervise laymen in the practice of law"). Accordingly, defendant is entitled to summary judgment with respect to plaintiff's allegation of an unspecified civil rights violation under Title 42, Chapter 21.

---

*Oklahoma Health Care Authority*, 335 F.3d 1175 (10th Cir. 2003) (cited by plaintiff as "Fisher v. Oklahoma Tenth Circuit Court of Appeals July 2003") (ADA); and, *Williams v. Wasserman*, 164 F. Supp. 2d 591 (D. Md. 2001) (cited by plaintiff as "Gary Williams v. Martin Wasserman") (ADA and 42 U.S.C. § 1983).

### III. Recommendation

Accordingly, I recommend that defendant's motion for summary judgment (docket no. 71) be **GRANTED** and that this action be dismissed.


Dated: April 19, 2011 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).